UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL            'O'

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Jonathan Galatzan, AUSA

Attorneys Present for Defendants:

Marc Greenberg

**Proceedings:**      CLAIMANT SEDNA INDUSTRIES, INC.'S MOTION FOR
SUMMARY JUDGMENT (Dkt. 34, filed April 14, 2016)

## I.      INTRODUCTION

On April 7, 2015, the United States filed the instant civil forfeiture action pursuant to 19 U.S.C. § 1595a and 16 U.S.C. § 2439 against defendant $1,230,488.00 ("defendant funds" or "the funds"). Dkt. 1 (Complaint). The defendant funds represent the proceeds of the court-ordered sale of approximately 118,000 pounds of frozen Patagonian toothfish (*dissostichus eleginoides*) seized on May 1, 2014 from the Port of Los Angeles. Id. at ¶ 5. The defendant funds are currently in the custody of the National Oceanic and Atmospheric Administration ("NOAA"). Id. at ¶ 6.

On April 22, 2015, movant Sedna Industries ("Sedna"), asserting that it is the rightful owner of the toothfish, filed a claim of interest in the proceeds from the sale of the toothfish pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules"). Dkt. 12. On the same date, Sedna also filed a motion to dismiss the government's civil forfeiture complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule G(8)(b)(i) of the Supplemental Rules. Dkt. 13 (Mot. Dismiss). In an order dated June 1, 2015, the Court denied Sedna's motion to dismiss. Dkt. 21.

On April 14, 2016, Sedna filed the instant motion for summary judgment, dkt. 34 ("MSJ"), a Joint Stipulation of Undisputed Facts, dkt. 34-2 ("Joint SUF"), and a Supplemental Statement of Undisputed Facts, dkt. 34-1 ("Sedna SUF"). On May 2,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

2016, the government filed an opposition to the instant motion, dkt. 37 ("Opp'n"), as well as a response to Sedna's Supplemental Statement of Undisputed Facts, dkt. 34 ("Govt. Resp."). On May 9, 2016, Sedna filed a reply. Dkt. 39 ("Reply"). On May 23, 2016, the Court provided the parties with a tentative order and held oral argument on the instant motion. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.     BACKGROUND

### A.     The Antarctic Marine Living Resources Convention Act of 1984

The United States is a Party to the Convention on the Conservation of Antarctic Marine Living Resources ("Convention"), which seeks to conserve Antarctic marine living resources, including toothfish. See generally 16 U.S.C. § 2431, 50 C.F.R. § 300, et seq; Complaint at ¶ 7. The Convention established the Commission for the Conservation of Antarctic Marine Living Resources ("CCAMLR"), whose functions include formulation and adoption of Conservation Measures necessary for the fulfilment of the objectives of the Convention. These Measures are generally binding on all Members of CCAMLR, including the United States.

The United States implements the Convention, and the binding Conservation Measures adopted by CCAMLR, pursuant to the Antarctic Marine Living Resources Convention Act of 1984 ("the Convention Act"), as codified at 16 U.S.C. § 2430, et seq. As is relevant here, in 2003 CCAMLR adopted Conservation Measure 10-05, which implements a comprehensive catch documentation system for the import and export of toothfish. Complaint at ¶ 8. The purpose of the documentation system is to track toothfish from harvest to the country of final import so that CCAMLR members can determine if the fish was caught in a manner consistent with CCAMLR conservation measures and prevent the trade in illegal, unreported, and unregulated fish. Id.

Under the Convention Act, "[i]t is unlawful for any person" (1) to "engage in harvesting or other associated activities in violation of the provisions of the Convention;" (2) to "violate any regulation promulgated under [the Convention Act]," or (3) to "ship, transport, offer for sale, sell, purchase, import, export, or have custody, control or possession of, any Antarctic marine living resource . . . harvested in violation of . . . any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

regulation promulgated under [the Convention Act]" or [b] certain other conservation measures under the Convention.  See 16 U.S.C. § 2435(1)-(3).

In the instant case, the government alleges that the importation of the toothfish violated several regulations promulgated under the Convention Act including, but not limited to, 50 C.F.R. §§ 300.107 (requiring catch documentation pursuant to the CCAMLR scheme), 300.114 (requiring pre-approval for import), and 300.117 (prohibiting import without catch documentation or preapproval).  See Complaint at ¶ 14. Accordingly, the government avers that the defendant funds represent the proceeds of the sale of an Antarctic marine living resource (i.e., toothfish) with respect to which an act prohibited by 16 U.S.C. § 2435(2) was committed—namely, the violation of several regulations promulgated under the Convention Act including, but not limited to, 50 C.F.R. §§ 300.107, 300.114, and 300.117.  See 16 U.S.C. § 2435(2) (rendering unlawful the violation of "any regulation promulgated under [the Convention Act]");   Complaint at ¶ 17.

On account of such violations, the defendant funds are, in the government's view, subject to seizure and forfeiture under the Convention Act, pursuant to 16 U.S.C. § 2439. Specifically, the Convention Act provides that the government "*may . . . seize* without warrant" (1) "any evidentiary item where there are reasonable grounds to believe that a person has committed or is attempting to commit an act prohibited by section 2435," as well as (2) "any Antarctic marine living resources . . . with respect to which such an act is committed."  16 U.S.C. § 2439(b)(4)(A)-(B) (emphasis added).  In addition, "Antarctic marine living resource[s] . . . with respect to which an act prohibited by section 2435 of this title is committed . . . *shall be subject to forfeiture* to the United States."  16 U.S.C. § 2439(d)(1).  The Convention Act further provides for civil penalties, stating that those who violate Section 2435 "shall be liable to the United States for a civil penalty" of up to $5,000 for each violation, and up to $10,000 for each "knowingly committed" violation. See 16 U.S.C. § 2437.[1]

---

[1]  The government further contends that because the funds represent the proceeds of the sale of merchandise whose importation or entry required a license, permit, or other authorization of an agency of the United States Government and such merchandise was not accompanied by such license, permit, or authorization, the defendant funds are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           'O'

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

*independently* subject to forfeiture pursuant to 19 U.S.C. § 1595a, which reads, in relevant part, as follows:

**(c)     Merchandise introduced contrary to law**

Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:

***

(2) The merchandise may be seized and forfeited if —

(A)     its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute;

(B)     its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization; . . . .

19 U.S.C. § 1595a(C)(2)(A)-(B).  In the instant motion, however, the parties do not discuss the propriety of seizure and forfeiture under 19 U.S.C. § 1595a, focusing instead on the propriety of seizure and forfeiture under the Convention Act pursuant to 16 U.S.C. § 2439(b)(4) and § 2439(d)(1).  The Court accordingly focuses its analysis on the relevant provisions of the Convention Act and not on 19 U.S.C. § 1595a.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | | Date | May 23, 2016 |
|----------|------------------------|---|------|--------------|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | | |

### B.    Factual Background

Claimant Sedna Industries is in the business of purchasing fish from companies that operate fishing vessels, and then marketing the fish to large wholesalers and retailers. JSUF at ¶ 1.  In 2014, Sedna purchased 118,000 pounds of toothfish from Antei, Ltd., a Russian fishing company, at a cost of $1,058,307.  Id. at ¶¶ 1, 4.  The toothfish were caught by the *Ugulan* and *Sparta* fishing vessels, which are owned by Antei, Ltd. and flagged by the Russian Federation.  Id. ¶ 3.  As the "flag State," the Russian Federation issued a Dissostichus Catch Document ("DCD") for both fishing vessels, as required under the CCAMLR catch documentation scheme.  Id.

On February 11, 2014, the *Ugulan* off-loaded the toothfish at Port Lyttleton, New Zealand, where it was transferred into shipping containers in a process supervised by officers from the New Zealand Ministry for Primary Industries ("New Zealand MPI"). Id.  The *Ugulan's* owner, Antei, Ltd., retained a company named Quadrant Pacific to serve as "the New Zealand Agent for the fishing vessels . . . assigned to oversee the regulatory compliance for th[e] shipment of [t]oothfish."  Id. at ¶ 5.

Despite Antei, Ltd.'s retention of Quadrant Pacific, on March 6, 2014, the toothfish shipping containers were exported from New Zealand on a commercial container ship, the *HS Bizet*, *without* a Dissostichus Export Document ("DED"), which is required under the CCAMLR catch documentation scheme.  Id. at ¶ 6.  A DED contains some of the same information as a DCD—for example, information regarding the vessel name, the document number issued for a particular vessel trip, and the dates of harvest—but also includes additional information, such as details regarding transport, the type of fish, and the amount of fish to be exported.  Id.

On March 29, 2014, roughly three weeks after the *HS Bizet* left New Zealand, a representative from Sedna contacted an employee at Quadrant Pacific requesting both the DCD and DED documentation.  Id. at ¶ 7.  The Quadrant employee responded that he was unfamiliar with such documentation and could not provide it.  Id. at ¶ 8.  Shortly thereafter, following an email exchange, a representative from the New Zealand MPI informed a representative from Quadrant that "[w]ithout a DED issued prior to the product leaving port, the US will not accept the export," and that New Zealand could not issue a DED "because the toothfish was not landed in [New Zealand] under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            'O'

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

CCAMLR Catch Document Scheme." Id. at ¶ 10.  On the same date, a representative from Sedna first contacted the NOAA for assistance, thereby initiating a back and forth between the NOAA and Sedna.  See id. at ¶¶ 11-13.

On April 6, 2014, a representative from the New Zealand MPI provided NOAA with a summary of what had transpired, explaining that on February 11, 2014, the New Zealand MPI (1) conducted an inspection of the *Ugulan* "that did not raise concerns . . . about the origin of the toothfish," and (2) gave the *Ugulan* "approval to unload in port." Id. at ¶ 14.  However, in what the representative called a "process" issue, the New Zealand MPI "never received the final completed DCD, nor DED requests prior to the toothfish departing New Zealand." Id.  On the same date, another representative from the New Zealand MPI informed Quadrant that "the shipping of toothfish from [New Zealand] without the appropriate documentation is inconsistent with New Zealand Customs Toothfish (Export) Prohibition Order 2009." Id. at ¶ 15.  Accordingly, the representative explained that "[r]eturning the fish to New Zealand for landing and exporting is therefore not a straightforward process" and would carry "no guarantee that it would resolve the market access issues." Id. at ¶ 15.

On April 7, 2014, the vessel carrying the containers of toothfish from New Zealand arrived in the Port of Los Angeles without a preapproval and without DEDs, as required under the Convention Act. Id. at ¶¶ 17-18.  The toothfish were accordingly detained by U.S. customs shortly thereafter. Id.

On May 1, the toothfish were seized by NOAA for lack of preapproval and documentation required to import. Id. at ¶ 20.  On May 6, 2014, Sedna submitted a letter to NOAA conceding noncompliance with NOAA rules and regulations, but proffering documentation purportedly indicating that the toothfish had been lawfully caught. Id. at ¶ 22.

On May 29, 2014, legal counsel for NOAA informed Sedna as follows

. . . The fish were seized by NOAA on May 1, 2014, pursuant to NOAA's authority under 16 USC 2439 (b)(4)(B) and are subject to forfeiture under 16 USC 2439(d) . . . The fish is currently being held by NOAA in a freezer warehouse, but will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

likely be sold shortly and the proceeds held in escrow. The fish were seized for violations of US import requirements and CCAMLR obligations, including those at 50 CFR 300.117 (b) and (t). This matter is still under investigation, so no decision has been made regarding charging or forfeiture. If forfeiture is sought, that portion of the case will be referred to the US Attorney's Office for judicial forfeiture.

Id. at ¶ 23.

On July 7, 2014, Sedna submitted a Petition for Remission or Mitigation to the Asset Forfeiture Division of the United States Attorney's Office for the Central District of California. Id. at ¶ 24. Sedna asserts that it did not receive a formal response from the U.S. Attorney. On October 29, 2014, this Court ordered that the government be permitted to sell the seized toothfish and that any proceeds of the sale be deposited into the NOAA Suspense Account to await the final determination of the forfeiture proceedings. Id. at ¶ 25; see Case No. 2:14-cm-00581-UA-1. In December 2014, the toothfish was sold for $1,230,488.00 via one-week online auction conducted by NOAA, and the funds are currently in an NOAA Suspense Account. Id. at ¶ 26. On April 7, 2015, the Government filed the instant civil forfeiture action.

In addition to the foregoing facts, to which both parties have stipulated, Sedna also avers that the approximately 118,000 pounds of toothfish "were caught lawfully and in compliance with [the CCAMLR]" by the *Ugulan* and *Sparta* fishing vessels. See Sedna SUF at ¶ 1. However, in support of this contention, Sedna cites only to the parties' Joint Stipulation of Facts, which plainly does not establish that the toothfish was "caught lawfully and in compliance with [the CCAMLR]." Accordingly, the government objects to this assertion, arguing that there is no admissible evidence in the record to support it. Govt. Resp. at ¶ 1. The Court agrees with the government, and accordingly does not rely upon Sedna's assertion that the toothfish "were caught lawfully and in compliance with [the CCAMLR]" in reaching its conclusion here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

In the instant motion, Sedna argues that it is entitled to summary judgment and a remittance of the defendant funds on the following grounds: first, because the NOAA did

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | | Date | May 23, 2016 |
|----------|------------------------|---|------|--------------|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | | |

not have the authority to seize or to seek forfeiture of the toothfish; second, because permitting forfeiture here would violate certain provisions of the Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983(a)(3)(A); third, because the NOAA abused its discretion by failing to mitigate the forfeiture; fourth, because forfeiture should be barred on the basis of the government's "unclean hands"; and finally, because forfeiture of the defendant funds constitutes an excessive fine under the Eighth Amendment to the United States Constitution. For the reasons set forth in the discussion that follows, the Court finds Sedna's arguments to be unavailing, and accordingly denies the instant motion for summary judgment.

### A. The Government's Authority to Seize and Seek Forfeiture of the Toothfish

Ordinarily, "[i]n a civil forfeiture action, the government bears the burden of proving by a preponderance of the evidence that the property is subject to forfeiture." United States v. $11,500.00 in U.S. Currency, 710 F.3d 1006, 1013 (9th Cir. 2013) (citing 18 U.S.C. § 983(c)(1)). Here, however, only two weeks before Sedna filed the instant motion, the parties expressly agreed in a joint stipulation "that the defendant $1,230,488.00 as substitute res . . . is subject to forfeiture pursuant to 19 U.S.C. § 1595a and 16 U.S.C. § 2439 for the reasons set out in the Complaint for Forfeiture." See Dkt. 32 ("Stipulation [1] to Forefeitability of Res and [2] to Setting Briefing Schedule for Claimant's Motion Seeking Mitigation of Forfeiture Based on its Affirmative Defenses" ("Joint Forfeiture Stipulation")).

As the Ninth Circuit has explained, "[b]y stipulating that the defendant currency is subject to forfeiture [for the reasons set forth in the complaint and pursuant to 16 U.S.C. § 2439 and 19 U.S.C. § 1595a], [Sedna] has relieved the government of [its] burden" of proving by a preponderance of the evidence that the property is subject to forfeiture. United States v. $132,245.00 in U.S. Currency, 764 F.3d 1055, 1057 (9th Cir. 2014); see also United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft, 659 F. Supp. 2d 1260, 1266 (S.D. Fla. 2009) (noting that although the government bears the initial burden of establishing by a preponderance of the evidence that the property is subject to forfeiture, the claimant "stipulated at trial that the [g]overnment had met its initial burden"). Indeed, in their Joint Forfeiture Stipulation, Sedna and the government further agreed that Sedna would "seek to mitigate the forfeiture of the defendant res by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

filing [the instant] dispositive motion based upon its affirmative defenses," which the government would oppose, and through which the Court would "fully dispos[e] of this matter" by "determin[ing] an appropriate amount to which the government is entitled in its final judgment of forfeiture." Id. at 2; see also Dkt. 33 (Court's order finding that "the defendant $1,230,488.00 as substitute res is subject to forfeiture pursuant to 19 U.S.C. § 1595a and 16 U.S.C. § 2439").

Despite the parties' Joint Forfeiture Stipulation and the Court's subsequent order finding that the funds are "subject to forfeiture pursuant to 19 U.S.C. § 1595a and 16 U.S.C. § 2439," Sedna nonetheless offers various arguments in the instant motion as to why NOAA purportedly did not have the authority to seize or seek forfeiture of the toothfish.[2] See MSJ at 15-18. In light of the parties' Joint Forfeiture Stipulation and the Court's prior order, the Court need not revisit the question of whether the toothfish was properly seized or subject to forfeiture proceedings. See $132,245.00 in U.S. Currency, 764 F.3d at 1057 (noting that, as here, because claimant had "stipulated that the defendant currency was subject to forfeiture," but expressly retained "the right to move to mitigate the forfeiture amount pursuant to the Eighth Amendment's bar on excessive fines," the court needed to "answer solely the question of whether [the forfeiture] violates the Eighth Amendment[]" and not whether the government had met its burden of establishing the propriety forfeiture).

**B.      The Government's Alleged Violation of the Civil Asset Forfeiture Reform Act of 2000**

Sedna further contends that this action must be summarily adjudicated in its favor because the government has failed to comply with the timing requirements set forth in the Civil Asset Forfeiture Reform Act of 2000 ("the CAFRA") (codified at 18 U.S.C. §§ 983, 985 and 28 U.S.C. § 2465). See MSJ at 11-15. However, Sedna has already raised this argument—and the Court has already rejected it—in connection with its motion to dismiss this action. Compare MSJ at 11-15 with Mot. Dismiss at 5-10. Specifically,

---

[2] Despite the government's citation to and reliance upon the Joint Forfeiture Stipulation in opposition to the instant motion, Sedna does not address the Joint Forfeiture Stipulation in its motion or reply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

Sedna previously asserted that the government was required to commence the instant *judicial* forfeiture action within 90 days of receiving Sedna's claim to the seized toothfish in July 2014, as set forth at 18 U.S.C. § 983(a)(3)(A).  Because the government purportedly failed to comply with this deadline, Sedna previously argued—and still maintains—that the government must return the funds and cease prosecuting the civil forfeiture, as required by section 983(a)(3)(B).  In its opposition to Sedna's motion to dismiss, the government responded—and the Court ultimately agreed—that section 983(a)(3) is inapplicable to the instant judicial action, since that section only governs judicial forfeiture proceedings that are triggered by the submission of a claim in pre-existing *administrative* forfeiture proceedings as set forth in section 938(a)(1).  See Dkt. 21 (June 1, 2015 Order on Sedna's Motion to Dismiss).

In reaching its conclusion, the Court declined to follow a recently-issued Third Circuit opinion that had endorsed the outcome advocated by Sedna, but has since been vacated following a grant of the government's request for rehearing en banc.  See Langbord v. U.S. Dep't of the Treasury, 783 F.3d 441, 444 (3d Cir. 2015), reh'g en banc granted, opinion vacated (July 28, 2015).  In the instant motion, Sedna provides no grounds for the Court to reconsider or otherwise revisit its previous conclusion regarding the inapplicability of 18 U.S.C. § 983(a)(3).  Accordingly, for the reasons set forth in the Court's order denying Sedna's motion to dismiss, the Court again declines to conclude that the instant action is barred as untimely under 18 U.S.C. § 983(a)(3).  See Dkt. 21.

## C.    The Government's Purported Abuse of Discretion

On July 7, 2014, Sedna submitted a Petition for Remission or Mitigation to the United States Attorney's Office for the Central District of California.  JSUF at ¶ 24.  In the instant motion, Sedna argues that the government has abused its discretion in not, as of yet, mitigating or remitting the forfeiture of the defendant funds.  However, as the government rightly notes, the funds have yet to be forfeited, and Sedna appears to be conflating NOAA's *seizure* of the toothfish (and the government's initiation of judicial forfeiture proceedings) with *forfeiture* of the toothfish or its proceeds, which has yet to occur.

Pursuant to 15 C.F.R. § 904.506, the "NOAA will not consider a petition for remission or mitigation of forfeiture and restoration of proceeds while a forfeiture

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

proceeding is pending in Federal court." 15 C.F.R. § 904.506(b)(3). Generally, petitions for remission or mitigation in judicial forfeiture proceedings are to be addressed to the United States Attorney General and submitted to the United States Attorney for the district in which the judicial forfeiture proceedings occurred. See 28 C.F.R. § 9.4(e); see also 15 C.F.R. § 904.506(b)(3) (noting that once a case "is referred to the U.S. Department of Justice for institution of judicial proceedings, and until the proceedings are completed, any petition received by NOAA will be forwarded to the U.S. Department of Justice for consideration"). Upon receipt of a petition, pursuant to 28 C.F.R. § 9.4(f),

> the U.S. Attorney shall direct the seizing agency [here, the NOAA] to investigate the merits of the petition based on the information provided by the petitioner and the totality of the agency's investigation of the underlying basis for forfeiture. The agency shall submit to the U.S. Attorney a report of its investigation and its recommendation on whether the petition should be granted or denied. Upon receipt of the agency's report and recommendation, the U.S. Attorney shall forward to the Chief, Asset Forfeiture and Money Laundering Section, the petition, the seizing agency's report and recommendation, and the U.S. Attorney's recommendation on whether the petition should be granted or denied.

28 C.F.R. § 9.4(f).

Thus, the ultimate determination of whether to grant any petition for remission or mitigation of forfeiture lies with the Chief of the Asset Forfeiture and Money Laundering Section ("AFMLS") at the Department of Justice. See 28 C.F.R. § 9.4(f). The government avers that any such determination in the instant case will occur only after forfeiture has been ordered by the Court. See Govt. Resp. at ¶ 13, 15. As a general matter, the Court notes that "[a] petition for remission or mitigation of forfeiture is a petition for administrative relief, not judicial relief. [Citation.] It gives the Attorney General *virtually unreviewable* discretion to ameliorate the harshness of forfeiture statutes in appropriate cases." United States v. U.S. Currency in the Amount of $2,857.00, 754 F.2d 208, 214 (7th Cir. 1985) (emphasis added); see also Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1102 n.4 (9th Cir. 1990) (noting that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

subject to limited exceptions, "the Attorney General's denial of a request for remission generally is not reviewable"). In any event, because the Chief of the AFMLS appears not to have made any determination as to claimant's petition under 28 C.F.R. § 9.4, there is no such determination for the Court to review here.[3]

### D.     Whether Forfeiture Should be Barred on the Basis of the "Clean Hands" Doctrine

Sedna argues that because, in its view, the NOAA had alternatives to seizing the toothfish, the Government's action for forfeiture is barred by the doctrine of "clean hands," which "insists that one who seeks equity must come to the court without blemish." E.E.O.C. v. Recruit U.S.A., Inc., 939 F.2d 746, 752 (9th Cir. 1991) (citation omitted). This doctrine "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with an inequitableness or bad faith relative to the matter in which [it] seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814 (1945). The rule applies to the government as well as to private litigants. Recruit U.S.A., 939 F.2d at 752.

Here, Sedna argues that in lieu of seizing the toothfish and seeking forfeiture, the NOAA could simply have allowed the toothfish to remain on the shipping vessel, not to officially enter the United States, and to return to New Zealand or be shipped elsewhere. MSJ at 18. In Sedna's view, the NOAA "should have made some effort to help when Sedna called and asked for assistance," or alternatively could have issued a maximum civil penalty of $5,000 under the Convention Act. Id. The government responds that the

---

[3] At oral argument on the instant motion, the parties indicated that they have made several attempts to resolve this dispute amicably, but have thus far been unsuccessful. The government further indicated that resolution of this civil forfeiture action would allow the Department of Justice to move forward with its consideration of any Petition for Remission or Mitigation, subject to consultation with the NOAA. In denying Sedna's motion for summary judgment, the Court notes that its conclusion as to the propriety of forfeiture under 16 U.S.C. § 2439 should not be construed as an adjudication on the merits of any petition for remission or mitigation of forfeiture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

defense of unclean hands is unavailable as a matter of law where, as here, the government is enforcing a congressional mandate in the public interest.  Opp'n at 6.

Ultimately, the Court cannot conclude that the NOAA's decision to seize the toothfish and seek forfeiture pursuant to 16 U.S.C. § 2439, rather than issue a civil penalty pursuant to 16 U.S.C. § 2437, "taint[s] [the NOAA] with an inequitableness or bad faith relative to the matter in which he seeks relief." Recruit U.S.A., 939 F.2d at 752 (quoting Precision Instrument, 324 U.S. at 814).  Sedna points to no evidence that the government acted in bad faith or otherwise misled Sedna in its correspondence prior to the arrival of the toothfish in Los Angeles.  Nor does Sedna point to any authority holding that the government may violate the "clean hands" doctrine by exercising its discretion to seize and seek forfeiture of a product imported in violation of customs laws, rather than seek some alternative and non-mutually exclusive sanction, such as the imposition of a civil penalty.

**E.      Whether the Forfeiture Sought by the Government is an Excessive Fine under the Eighth Amendment**

Sedna's final argument in its motion for summary judgment is that the government's forfeiture of the defendant funds constitutes an excessive fine under the Eighth Amendment to the United States Constitution.  For reasons explained below, the Court finds that the Eighth Amendment is not implicated in this action.

The Eighth Amendment to the United States Constitution forbids the "impos[ition]" of "excessive fines," in addition to its familiar prohibitions on "[e]xcessive bail" and "cruel and unusual punishments."  U.S. Const. amend. VIII.  The Supreme Court's first case to consider the potential application of the Excessive Fines Clause to civil *in rem* forfeitures was Austin v. United States, 509 U.S. 602 (1993).  In Austin, the Court explained that "civil proceedings," including forfeiture actions, "may advance punitive as well as remedial goals." Id. at 610.  Accordingly, the Court held that the threshold question in determining whether forfeiture actions run afoul of the Excessive Fines Clause is not "whether [the] forfeiture . . . is civil or criminal, but rather *whether it is punishment*." Id. (citation omitted) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

In United States v. Bajakajian, 524 U.S. 321, 337 (1998), the Supreme Court further explained that a civil forfeiture action that is properly understood as punitive will generally violate the Excessive Fines Clause "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense." In weighing the gravity of the defendant's offense, courts in the Ninth Circuit generally consider four factors, as outlined by the Supreme Court in Bajakajian: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." United States v. $100,348.00 in U.S. Currency, 354 F.3d 1110, 1122 (9th Cir. 2004) (citing Bajakajian, 524 U.S. at 337-40). Accordingly, Sedna argues in the instant motion for summary judgment that application of the four Bajakajian factors demonstrates that forfeiture of the $1,230,488.00 in defendant funds is grossly disproportional to the gravity of Sedna's offense and accordingly violative of the Excessive Fines Clauses. See MSJ at 22-25 (application of the Bajakajian factors).

However, in order "[t]o determine if action by the government violates the Excessive Fines Clause, [the Court] must *first* determine whether the action is [properly considered] punishment." United States v. $273,969.04 U.S. Currency, 164 F.3d 462, 466 (9th Cir. 1999) (emphasis added). In opposition to the instant motion, the government does not apply the Bajakajian factors, arguing instead that the Excessive Fines Clause is inapplicable here because forfeiture pursuant to section 2439 of the Convention Act does not constitute "punishment" under Austin and Bajakajian. Specifically, the government contends that toothfish seized pursuant Section 2439 of the Convention Act is "contraband" and not merely "an essential instrumentality of the underlying Customs offense," such that forfeiture here is purely "a remedial action against guilty property" and not punitive in nature. Opp'n at 12.

Upon careful consideration of the parties' arguments, the Court finds the government's contention to be more persuasive and consistent with the caselaw. In reaching this conclusion, the Court notes that the instant action bears many of "the hallmarks of traditional civil *in rem* forfeitures," which generally were "not considered punishment against the individual for an offense." Bajakajian, 524 U.S. at 331.

First, the forfeiture here stems from the alleged violation of one of the country's customs laws, which "traditionally [are] viewed as non-punitive." United States v. An

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

Antique Platter of Gold, 184 F.3d 131, 140 (2d Cir. 1999) (finding forfeiture under 19 U.S.C. § 1595a(c) of a Sicilian antique imported in violation of laws prohibiting false customs-form statements did not constitute a "fine" under Bajakajian in part because "the nature of the statute that authorizes the forfeiture . . . is a customs law"); see also Bajakajian, 524 U.S. at 331(citing Taylor v. U S, 44 U.S. 197, 210 (opinion of Story, J.) (stating that laws providing for *in rem* forfeiture of goods imported in violation of customs laws, although in one sense "imposing a penalty or forfeiture[,] . . . truly deserve to be called, remedial")).

Second, the relevant forfeiture statute at issue here—16 U.S.C. § 2439(d)—contains no "innocent owner" defense provision and thus "can[] be imposed upon innocent owners," which Sedna purports to be.  Bajakajian, 524 U.S. at 332.  The Supreme Court has explained that "[u]nlike traditional forfeiture statutes"—and unlike the relevant statute here—the civil forfeiture statute in Austin expressly provided an "innocent owner" defense.  Austin, 509 U.S. at 619.  According to the Court, the presence of such an "innocent owner" exemption generally focuses the forfeiture provisions "on the culpability of the owner *in a way that makes them look more like punishment*, not less."  Id. (emphasis added).  Accordingly, the Austin Court found the forfeiture provision at issue in that case to be a punitive "fine" in part because it explicitly provided an innocent owner defense.  Id.  Here, the absence of any such "innocent owner" provision in the Convention Act accordingly makes the Act's forfeiture provision appear *less* like punishment, not more.

Third, the government here "has . . . proceeded against the currency itself," and has not "sought [or] obtained a criminal conviction of [the claimant] personally."  Id. at 331-32.  In contrast, the forfeiture found to be punitive in Bajakajian was only "imposed at the culmination of a criminal proceeding," required "conviction of an underlying felony," and "[could not] be imposed upon an innocent owner . . . but only upon a person who has himself been convicted of a . . . reporting violation."  Id. at 331.

Fourth, despite Sedna's contention to the contrary, the forfeiture here is not properly characterized as a $1.2 million "sanction . . . for an infraction that *normally* carries a penalty of $5,000."  Reply at 10 (emphasis added).  Rather, the $5,000 civil penalty set forth at 16 U.S.C. § 2437 is *wholly independent* of the forfeiture provision at 16 U.S.C. § 2439, which states—without reference to civil penalties—that any Antarctic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

marine living resource "with respect to which an act prohibited by section 2435 . . . is committed . . . *shall be subject to forfeiture* . . . ." 16 U.S.C. § 2439(d)(1).  Accordingly, among the conduct that "shall" provide grounds for forfeiture under section 2435 is the "violat[ion] any regulation promulgated under [the Convention Act]," see 16 U.S.C. § 2435(2), including those regulations Sedna purportedly violated here: 50 C.F.R. §§ 300.107, 300.114, and 300.117.  Where there is a violation of these regulations under section 2435(2), it is irrelevant for purposes of the Court's analysis here that "there is no [additional] allegation that the fish were harvested in violation of the [C]onvention" under section 2435(1).[4]  Reply at 11.  In other words, even if, as Sedna asserts, "the Government [has] dropped any claim that the fish were *harvested* illegally," this does not mean that "the forfeiture is no longer remedial," id. at 11, as the government still contends that the "importation of the toothfish violated several regulations promulgated under the [Convention] Act," Complaint at ¶ 15.  With respect to forfeitures for violation of section 2435(2) (regarding regulatory violations under the Convention Act), "the conduct of the property owner [as to the actual *harvesting* of the toothfish may very well be] irrelevant." Bajakajian, 524 U .S. at 330 (citing Origet v. United States, 125 U.S. 240, 246 (1888)).

---

[4]  Although Sedna asserts that "it is not alleged that there was a violation of the regulations promulgated to enforce the [C]onvention," Reply at 11 (citing 16 U.S.C. §2435(2), this is plainly not true.  Paragraph 15 of the complaint reads as follows:

> On May 1, 2014, the toothfish were seized upon import for a violation of the [Convention] Act.  Pursuant to 16 U.S.C. § 2435(2), it is unlawful for any person to violate any regulation promulgated under the [Convention] Act. *The importation of the toothfish violated several regulations promulgated under the [Convention] Act* including, but not limited to, 50 C.F.R. §§ 300.107 (catch documentation), 300.114 (pre-approval for import), and 300.117 (importation without documentation or preapproval).

Complaint at ¶ 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

The district court's decision in United States v. Approximately 1,170 Carats of Rough Diamonds Seized at John F. Kennedy Int'l Airport on Jan. 13, 2004, No. 05-cv-5816, 2008 WL 2884387 (E.D.N.Y. July 23, 2008) is particularly instructive here. In that case, the claimant entered the United States carrying approximately 1,170 carats of rough diamonds from Brazil. Upon arriving at JFK International Airport in New York, the claimant declared on his customs form that the diamonds had an import value of $160,000 and presented them to a customs official for inspection, "believing that he was in compliance" with the Clean Diamond Trade Act ("CDTA"), 19 U.S.C. §§ 3901, et seq. Id. at *1, *3. After determining that the importation did not comply with the requirements of the CDTA, the official seized the diamonds, "notwithstanding [the claimant's] request that he be allowed to return them to Brazil or ship them to Belgium without entry into the United States." Id. Over a year later, the United States instituted an in rem forfeiture action against the diamonds under the CDTA.

In the forfeiture action, it was undisputed that the claimant had arrived in the United States without the requisite "Kimberly Process Certificate," as required by the CDTA.[5] The enforcement mechanism of the CDTA imposes a civil penalty of up to $10,000 for any violation of the act, on a strict liability basis, and a fine of up to $50,000 and a term of imprisonment of up to 10 years for any willful violation. Id. at *3 (citing19 U.S.C. § 3907(a)). In addition, the CDTA provides that "[t]hose customs laws of the United States, both civil and criminal, including those laws relating to seizure and forfeiture, that apply to articles imported in violation of such laws shall apply with respect to rough diamonds in violation of this chapter." Id. (citing19 U.S.C. § 3907(b)). However, the claimant argued that (1) the language of the CDTA and relevant forfeiture laws does not contemplate forfeiture of Brazilian diamonds openly declared to customs officials even if imported in violation of the CDTA, and that (2) even if the CDTA allows forfeiture of the diamonds, the forfeiture violates the Excessive Fines Clause of the Eighth Amendment under Bajakajian. Id. at *4.

---

[5] A Kimberley Process Certificate is "a forgery resistant document . . . that demonstrates that an importation or exportation of rough diamonds has been controlled through the [Kimberley Process Certification Scheme] and contains the minimum elements set forth in Annex I to the [Kimberley Process Certification Scheme] ." 1,170 Carats of Rough Diamonds, 2008 WL 2884387, at *2 (quoting 19 U.S.C. § 3902(5)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

The Court rejected these arguments, finding that the language of the CDTA applied to the diamonds, that there is no good faith or innocent owner defense to the CDTA, and that forfeiture of the diamonds under the CDTA comports with the legislative intent of the statute. See id. at *4-*14. The court further concluded that forfeiture under the CDTA is not "punishment" under Bajakajian and thus falls outside the reach of the Excessive Fines Clause. Id. at *12. Specifically, the Court explained that the forfeiture of the diamonds—much like the government's civil *in rem* forfeiture here—was brought against the diamonds themselves and not their owner, was imposed for violation of a customs law, and was brought pursuant to a provision of the CDTA which did not include an exception for innocent owners. Id. The court also rejected the claimant's argument that the CDTA is "really a reporting requirement" more analogous to the currency reporting violations in Bajakajian than to attempts to evade customs duties or smuggle goods. Id. at *13. Here, Sedna similarly argues that its failure to provide the DED documentation upon arrival in the United States, as required by the regulations promulgated under the Convention Act, was only a "formality" and "purely a matter of paperwork." MSJ at 15, 24. However, as the court explained in 1,170 Carats of Rough Diamonds,

> [C]ustoms laws are designed not only to control the amounts and values of goods in transit to and from the United States, but also to accomplish additional policy objectives, such as levying proper duties and removing from the stream of commerce goods that are contrary to public policy . . . [The Claimant's] failure to provide in a [Kimberly Process Certificate] information regarding the value and country of origin the Defendant Diamonds *affects the determination of whether the diamonds will be admitted into the United States as controlled by the [Kimberley Process Certification Scheme].*

1,170 Carats of Rough Diamonds, 2008 WL 2884387, at *13 (emphasis added).

So, too, does Sedna's failure here to provide the required DED documentation upon arrival in the United States affect the determination of whether the toothfish may be admitted pursuant to Measures adopted by the CCAMLR and the requirements of the Antarctic Marine Living Resources Convention Act of 1984. C.f. 16 U.S.C. § 2431(a)(1)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

("The Convention on the Conservation of Antarctic Marine Living Resources establishes international mechanisms and creates legal obligations necessary for the protection and conservation of Antarctic marine living resources[.]"). Post-Bajakajian cases make clear "that forfeiture of items imported in violation of applicable law, [such as] an antique platter of gold imported through a false customs declaration and cases of liquor brought into a state without a liquor-transporting license, are remedial *in rem* civil forfeitures regardless of whether possession of the items is independently illegal." Id. (citing An Antique Platter of Gold, 184 F.3d at 140 (holding that forfeiture of an antique introduced contrary to law was remedial because the forfeiture remedied violation of customs laws, although pecuniary loss to the government was not at issue); In Re 1650 Cases of Seized Liquor, 168 Vt. 314, 325-37 (1998) (holding that a state law providing for forfeiture of liquor transported through Vermont without the required liquor transport license did not implicate the Eighth Amendment under Bajakajian because, lacking the required license, the liquor had become contraband, rendering it forfeitable irrespective of the innocence of the owner); One Lot Emerald Cut Stones and One Ring v. United States, 409 U.S. 232, 233 (1972) (holding that regardless of whether possession of jewelry was illegal, its forfeiture after importation without submitting proper customs forms was remedial, not punitive, for purposes of Double Jeopardy Clause)); see also United States v. 144,774 pounds of Blue King Crab, 410 F.3d 1131, 1136 (9th Cir. 2005) (explaining that a particular shipment of blue king crab was "illegal to possess not because crab is inherently unlawful, but because this particular shipment of crab allegedly was received and acquired in a way that rendered it illegal under the Lacey Act[, 16 U.S.C. § 3374(a)]"). Such forfeiture pursuant to the Antarctic Marine Living Resources Convention Act of 1984 is accordingly remedial, does not constitute "punishment" under Austin and Bajakajian, and therefore does not implicate the Eighth Amendment's prohibition on excessive fines.

V.     CONCLUSION

        In accordance with the foregoing, the Court **DENIES** Sedna's motion for summary judgment, dkt. 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:15-cv-02566-CAS-MRWx | Date | May 23, 2016 |
|----------|------------------------|------|--------------|
| Title | UNITED STATES OF AMERICA VS. $1,230,488.00 AS SUBSTITUTE RES | | |

On account of the parties' Joint Forfeiture Stipulation, dkt. 32, and the Court's order dated April 18, 2016, dkt. 33, the government is directed to prepare a form of judgment to be lodged with the Court in accordance with this decision and the Local Rules of this Court.[6]

IT IS SO ORDERED.

|  | 00 | : | 10 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |

---

[6] In the parties' Joint Forfeiture Stipulation, filed on April 1, 2016, the parties "agree[d] that the currently-scheduled pre-trial and trial dates should be taken off calendar," that "[Sedna would] seek to mitigate the forfeiture of the defendant res by filing a dispositive motion based upon its affirmative defenses," and that "the government [would] oppose such a motion, allowing the Court to determine an appropriate amount to which the government is entitled in its final judgment of forfeiture, fully disposing of this matter." Dkt. 32. Having denied defendant's "dispositive" motion, the Court has determined that, at least for purposes of the instant civil forfeiture action, the government is entitled to the full amount of the defendant funds. However, the Court's conclusion as to the propriety of forfeiture under 16 U.S.C. § 2439 should not be construed as an adjudication on the merits of any petition for remission or mitigation of forfeiture.